UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEVI L. B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_____________________________/

Case No. 4:25-cv-11318

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)**

## I. INTRODUCTION

Plaintiff Levi L. B. filed a Title II application for a period of disability and disability insurance benefits and Title XVI application for supplemental security income on August 16, 2022, alleging disability beginning on February 25, 2022. (ECF No. 7-1, PageID.264–268, 284–289). The application was denied at the initial administrative level on January 31, 2023, and upon reconsideration on August 24, 2023. (*Id.* at PageID.97–136). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on September 29, 2023, which took place on March 11, 2024, at which Plaintiff, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID.179–180, 41–92). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council

denied Plaintiff's request for review on March 12, 2025. (*Id.* at PageID.137–157, 28–30). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir. 2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. (ECF No. 5).

After careful scrutiny of the record and the parties' briefs, and for the reasons below, Plaintiff's *Motion for Summary Judgment* (ECF No. 10) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 12) is **GRANTED**, and the administrative decision is **AFFIRMED**.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a public assistance measure providing another resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). That said, while they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for determining whether a claimant is disabled. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[1] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

## IV. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 48 years old on the alleged disability onset date. (ECF No. 7-1, PageID.150). He lives with his daughter and grandchildren. (*Id.* at PageID.47). His education consists of him completing the 7th grade. (*Id.* at PageID.48). Plaintiff's primary complaints include lumbar condition, right shoulder condition, heart condition, depression, and anxiety. (*Id.* at PageID.285). In the past, Plaintiff worked as a fast-food attendant, housekeeper, and production worker. (*Id.* PageID.286).

Following an administrative hearing, and employing the five-step process, the ALJ found at **Step One** that Plaintiff "has not engaged in substantial gainful activity since February 25, 2022, the alleged onset date[.]" (*Id.* at PageID.142). At **Step Two**, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): right foot fracture; degenerative changes of right foot; plantar fascial fibromatosis; right ankle fracture; right wrist fracture; enthesopathy of right foot and ankle; obesity; depression; and anxiety. (*Id.* at PageID.142–143). But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination of his impairments, met or medically equaled the severity of one of those listed in the applicable regulations. (*Id.* at PageID.143). Next, the ALJ articulated Plaintiff's Residual Functional Capacity ("RFC") as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing ladders, ropes or scaffolds; no crawling; can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; no pushing/pulling or operation of foot controls with the right lower extremity; needs the option to alternate between sitting and standing in 20 minute intervals; frequently handle and finger with the right upper extremity; needs the use of a cane for ambulation; no use of moving machinery or work at unprotected heights; work limited to simple and routine tasks.

(*Id.* at PageID.146).

At **Step Four**, having consulted a VE, the ALJ concluded that Plaintiff has past work as a hi lo driver (unskilled, medium) and kitchen helper (semi-skilled, medium) but he "is unable to perform any past relevant work as actually or generally performed." (*Id.* at PageID.150). The ALJ next concluded, at **Step Five**, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as marker; garment sorter; and folder. (*Id.* at PageID.151). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act during the relevant time frame. (*Id.* at PageID.151–152).

## V. DISCUSSION

In his motion for summary judgment, Plaintiff presents two arguments. First, he asserts that that the ALJ improperly determined Plaintiff's RFC as it did not properly account for Plaintiff's restrictions related to use of an ambulatory device and sit/stand options and it was internally inconsistent. (ECF No.10,

PageID.832). Second, he asserts the ALJ failed to reconcile his mental findings in the paragraph "B" criteria with the mental limitations assessed in the RFC. (*Id.*). Each of these arguments is addressed below.

**A. Substantial Evidence Supports the ALJ's RFC Finding**

Plaintiff begins by challenging the ALJ's RFC as to his ability to ambulate with an assistive device as well as his capacity to alternate between sitting and standing in 20-minute intervals. Plaintiff maintains "the combination of these limitations is inconsistent with the light exertional RFC finding made by the ALJ." (*Id.*). He later contends that,

> SSR 96-9p states that when a medically required hand-held assistive device is needed only for prolonged ambulation, then the unskilled sedentary occupational base will not ordinarily be significantly eroded. This statement inherently implies that while sedentary work is not typically eroded by the use of a cane for ambulation because it only requires occasional walking, use of an assistive device would erode the ability to perform light exertional work. As such, the use of a cane for prolonged ambulation would naturally have an impact on the light occupational base. Furthermore, SSR 96-9p goes on to explain that because sedentary work only requires "occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." Once again, this implies that while sedentary work is not impacted, work at higher levels would be impacted.

(*Id.* at PageID.833). He therefore maintains that "the RFC rendered by the ALJ is internally inconsistent." (*Id.*). The Court disagrees.

An overview of the applicable regulations and rulings is necessary. Relevant here, the regulations define "light" work as follows:

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). In contrast, "sedentary" work is defined as:

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). Furthermore, Social Security Ruling ("SSR") 83-10 defines a "full range of work" as "[a]ll or substantially all occupations existing at an exertional level." SSR 83-10, 1983 WL 31251, at *6. It also explains the difference between "frequent" and "occasionally":

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be

> accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.
>
> * * * * * * *
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

*Id.* at *5–6. Notably, SSR 83-12, which provides a "framework for adjudicating claims in which an individual has only exertional limitations, and no specific rule applies because the individual's residual functional capacity (RFC) does not coincide with any one of the defined exertional ranges of work," directs that:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4. In accordance with the above regulations, the ALJ sought testimony from a VE to determine whether jobs exist in the national economy that could be performed by a hypothetical individual with Plaintiff's vocational profile and limitations, including a sit/stand option every 20 minutes and use of a cane to ambulate. (ECF No. 7-1, PageID.86–87). In response to hypothetical questions posed by the ALJ, the VE testified that an individual with the same vocational profile and limitations could perform light unskilled jobs of marker (59,000 jobs nationally), garment sorter (23,000 jobs), and folder (31,000 jobs). (*Id.* at PageID.84–86).[2] As discussed below, Plaintiff fails to show any reversible error here.

[2] The ALJ also posed a question about whether that same hypothetical individual above could perform work at the sedentary level, and the VE testified such individual could perform unskilled sedentary jobs of ink printer (16,000 jobs nationally), lens inserter (19,000 jobs), and patcher (18,000 jobs). (*Id.* at PageID. 86–88).

First, Plaintiff maintains that the ALJ's limitation to a sit/stand option coupled with the use of a cane to ambulate precludes him from performing light work. (ECF No. 10, PageID.832). Plaintiff next argues the RFC rendered by the ALJ is internally inconsistent based on the occupational base for light work being impacted by using an assistive device because of the lifting and carrying requirements. (*Id.* at PageID.83). In rejecting a similar argument, the court in *Latham v. Comm'r of Soc. Sec.*, held:

> Plaintiff relies on *Love v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 893 (W.D. Mich. 2009), but that case discusses the "illogic" of the conclusion that a plaintiff would need an assistive device to ambulate but could "carry 20 pounds." 605 F. Supp. 2d at 907. Notably, the court in *Love* did not similarly comment on the logic of the limitation, also included in the hypothetical to the VE in that case, of lifting and carrying up to *10* pounds frequently. *Love* says nothing about the logic of the limitation of the use of a cane to ambulate and a limitation of carrying up to 10 pounds. Because substantial evidence supported the ALJ's finding that Plaintiff did not need a cane for balance but only to *ambulate*, the RFC for light work, which requires Plaintiff to *carry* no more than 10 pounds and does not require Plaintiff to *carry* up to 20 pounds, is not internally inconsistent with the restriction of a cane for ambulation and is supported by substantial evidence.

No. 16-CV-10690, 2017 WL 1173773, at *2 (E.D. Mich. Mar. 30, 2017). Similar to the plaintiff in *Latham*, there is nothing in the RFC or the question posed to the VE that requires Plaintiff here to carry up to 20 pounds.

Plaintiff next argues that the ALJ's decision is erroneous because she relied on the state agency findings and the consultative examiner's opinion, but those

providers did not include a restriction regarding a sit/stand option. This argument is also not well-taken. The ALJ may deviate from the medial provider's opinions and find Plaintiff more limited based on the record as a whole. Indeed, this Court has repeatedly rejected the argument that an ALJ errs when the ALJ's more-restrictive limitations do not align with the opinion of any medical provider. *See, e.g.*, *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) (claimant's "argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing"), *report and recommendation adopted,* 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016). The Court finds the ALJ's decision to afford partial weight to the opinions of the medial providers is supported by substantial evidence in the record.

Finally, Plaintiff maintains that the ALJ could not rely on the vocational expert's experience to resolve conflicts between his testimony and information in the Dictionary of Occupational Titles ("DOT"). (ECF No. 10, PageID.834). At times, a vocational expert's testimony will conflict with the information included in the Dictionary of Occupational Titles ("DOT"). *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009). "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the [vocational expert] if the evidence that he or

she has provided 'conflicts with [the] information provided in the DOT'" and obtain a reasonable explanation for apparent conflicts between the expert's evidence and the DOT. *Id.* (quoting SSR 00-4p, 2000 WL 1898704, at *4).

Here, the ALJ concluded that based on Plaintiff's RFC and the vocational expert's testimony, Plaintiff would be able to perform work as a marker; garment sorter; and folder. (ECF No. 7–1, PageID.151). The ALJ provided the following explanation about conflicts between the expert's testimony and the DOT:

> Social Security Ruling 00-04 directs adjudicators to "resolve the conflict (between vocational expert testimony and the DOT) by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." The vocational expert testified that their testimony was consistent with the DOT except for areas that the DOT did not address; in this case, unilateral limitations, sit-stand, and differentiations in climbing. The vocational expert testified that they based their testimony regarding these factors on their professional experience. The undersigned finds that the vocational expert's explanation regarding issues unaddressed in the DOT is reasonable. Therefore, the undersigned relied on the expert witness's testimony in accordance with SSR-04p.

(*Id.* at PageID.151). Plaintiff argues that while the vocational expert testified in the affirmative regarding the cane and sit/stand option, the testimony impermissibly depended on the expert's experience, which does not satisfy the requirements of SSR-004p. (ECF No. 10, PageID.834).

The Commissioner responds that the ALJ's reliance on the vocational expert's testimony was allowable. (ECF No. 12, PageID.9–10). The

Commissioner further asserts that the Sixth Circuit has found that "a vocational expert may rely on sources other than the DOT, including her own past experience, in evaluating a hypothetical claimant's vocational potential." (*Id.* at PageID.852) (citing *Ellison v. Comm'r of Soc. Sec.*, 101 F. App'x 994, 996 (6th Cir. 2004).

While Plaintiff frames his argument as challenging the ALJ's failure to resolve a conflict between the vocational expert's testimony and the DOT, there is no "apparent conflict" between the DOT and the expert's testimony. Furthermore, even if there is a conflict between the expert's testimony and the DOT, "neither the DOT or [the expert's testimony] automatically trumps when there is a conflict." SSR 00–4p. When there is a conflict, the ALJ must resolve the conflict by determining whether the explanation given by the expert is reasonable and provides a basis for agreeing with the expert rather than the DOT information. SSR 00–4p. Plaintiff's argument focuses on a perceived issue that light work is precluded by limitations to a sit/stand option and the need to ambulate. That said, the vocational expert's testimony indicated that the jobs could be performed even with the limitations identified by the ALJ. The ALJ did not err by relying on the vocational expert's opinion and expertise. *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) ("When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career

counseling.'") (citation omitted). Thus, Plaintiff's argument is actually challenging the ALJ's RFC finding and its lack of the limitation Plaintiff seeks.

Even framing Plaintiff's argument as a challenge to the RFC, his argument fails. Plaintiff cites no evidence in the record to support that his limitations would preclude his ability to perform a range of light work and therefore limited to sedentary work. And the ALJ's RFC is supported by substantial evidence. Accordingly, the ALJ did not err and Plaintiff's first argument is meritless.

In short, the ALJ concluded that the evidence, taken as a whole, contradicted Plaintiff's claim that his impairments were so severely incapacitating that he could not engage in substantial gainful activity. Substantial evidence supports this conclusion.

### B. The RFC Finding Properly Accounted for Plaintiff's Moderation Limitations in Concentration, Persistence, or Pace

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996 WL 374184, at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the

Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3). While the ALJ makes the RFC determination, that determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

The regulation set forth in 20 C.F.R. §§ 404.1520a and 416.920a "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8P, 1996 WL 374184, at *4. These findings, which examine four broad areas of functioning, are used to rate the severity of the claimant's mental impairment(s) at steps two and three of the sequential evaluation process. *Id.* Here, at step three, the ALJ found that Plaintiff had mild limitations in the areas of understanding, remembering, or applying information; interacting with others; as well as adapting and managing oneself and a moderate limitation in the area of concentrating, persisting, or maintaining pace.

Plaintiff contends that despite the ALJ's finding of moderate limitation in the area of concentrating, persisting, and maintaining pace, the ALJ included no limitation addressing this area.

The ALJ's paragraph B findings do not conflict with his RFC findings. To the extent that Plaintiff asserts that the ALJ's RFC finding needed to mirror his step-three findings, the argument lacks merit. As the ALJ explained in his decision, paragraph B findings are not an RFC assessment but instead "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (ECF No. 7–1, PageID.145–146); *see* SSR 96-8p, 1996 WL 374184, at *4. In other words, an ALJ need not include a paragraph B finding as part of his RFC determination. *Vaughn v. Comm'r of Soc. Sec.*, No. 1:13-CV-1266, 2015 WL 5691003, at *5 (W.D. Mich. Sept. 28, 2015); *Fellows v. Comm'r of Soc. Sec.*, No. 1:14-CV-506, 2015 WL 4134699, at *6 (W.D. Mich. July 8, 2015). Thus, "a [moderate] limitation is not synonymous with a specific functional restriction or RFC." *Haggard v. Berryhill*, No. 3:17-CV-99-DCP, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018); *see also Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) ("Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at

steps four and five. At step four of the sequential evaluation process, the ALJ correctly considered the effect of Plaintiff's symptoms on her concentration, persistence, and pace when he allowed Plaintiff to be off task five percent of the time.").

In evaluating Plaintiff's RFC, the ALJ appropriately considered the evidence as a whole, including Plaintiff's subjective complaints. (*Id.* at PageID.144–146). The ALJ also discussed Plaintiff's treatment records reflecting mostly normal mental status examinations which indicated that:

> the medical evidence of record provides some support for the claimant's allegations of limited concentration due to anxiety and depression, but does not demonstrate disabling limitations in cognition, stress tolerance, or the ability to tolerate or perform basic interactions with others. Psychiatrist Hanheung Lee, M.D., diagnosed the claimant with depression, anxiety, and agoraphobia in July 2023 and started him on antidepressant medication (Exhibit 10F/22–27). At their initial exam of the claimant, Dr. Lee noted the claimant's complaints of anxiety, worrying, poor concentration, self-isolation, and low energy (Exhibit 10F/22). However, Dr. Lee observed unremarkable findings on the claimant's mental exam, including calm and cooperative mood, appropriate affect, appropriate grooming and hygiene, logical speech, and was verbal and engaging in conversation (*Id.*). The claimant reported he was paranoid when going outside but otherwise exhibited normal stream of mental activity and no perceptive disturbances (Exhibit 10F/20). The claimant was alert and able to focus (*Id.*). At a follow-up therapy appointment, the claimant appeared alert, cooperative, calm, engaged, and receptive (Exhibit 12F/40).
>
> In October 2023, Dr. Lee changed the claimant's antidepressant medication after the claimant reported his current medication was "too strong" (Exhibit 12F/31, 32). On a mental status exam, the claimant was "not depressed" and presented with coherent, goal directed

> speech (Exhibit 12F/31). Subsequent exams revealed similar observations (Exhibit 12F/9; 14F/3). Other mental health care providers reported that the claimant appeared calm and cooperative, with regular memory and normal attention (Exhibit 12F/21, 15, 7, 3). No treating source of record reported significant social limitations in the claimant (e.g., difficulty communicating, unusual behavior, inability or unwillingness to cooperate).
>
> No treating source reported signs of acute anxiety (e.g., hypervigilance, psychomotor agitation, exaggerated startle, or distractibility) or acute depression (e.g., psychomotor slowing, poverty of speech) in the claimant. No treating source reported disabling limits in the claimant's attention or concentration (e.g., distractibility, needing to be redirected to the task or conversation at hand, inattentiveness, restlessness).

(*Id.* at PageID.148–49).

Contrary to Plaintiff's argument, the ALJ addressed Plaintiff's moderate limitation in concentrating, persisting, and maintaining pace in his RFC finding by limiting him to "simple and routine tasks." (*Id.* at PageID.146). Several cases from the Sixth Circuit, and other caselaw, similarly confirm that limitations similar to those the ALJ included in Plaintiff's RFC here adequately addressed the claimant's moderate limitations in concentration, persistence, or maintaining pace. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (concluding that a "limitation to simple, routine, and repetitive tasks" adequately accounted for the plaintiff's "moderately-limited ability 'to maintain attention and concentration for extended periods'"); *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *2–4 (6th Cir. Jan. 31, 2020) (RFC limitation to "performing

simple and routine tasks" was not inconsistent with ALJ's step three finding that the plaintiff had moderate limitations in concentration, persistence, and pace because the plaintiff failed to show that the evidence warranted additional limitations); *Farmer v. Comm'r off Soc. Sec.*, No. 1:20-CV-562, 2022 WL 2526946, at *3–4 (W.D. Mich July 7, 2022) (additional limitations not warranted as limitation to "simple, routine, repetitive work" fully accounted for moderate limitations in concentrating, persisting, or maintaining pace); *Johnson v. Comm'r of Soc. Sec.*, No. 1:19-CV-1024, 2021 WL 1085006, at *3, 5–6 (W.D. Mich. Mar. 22, 2021) (limitation to "simple, routine and repetitive tasks" and "simple work-related decisions with normal break[s]" properly accounted for the plaintiff's moderate mental limitations); *Potter v. Comm'r of Soc. Sec.*, No. 1:19-CV-837, 2021 WL 1049871, at *4–5 (W.D. Mich. Mar. 19, 2021) (the ALJ's finding that the plaintiff could "perform simple, routine, repetitive tasks" adequately addressed her moderate limitations in concentrating, persisting, and maintaining pace); *Hycoop v. Comm'r of Soc. Sec.*, No. 1:15-CV-795, 2016 WL 4500794, at *3 (W.D. Mich. Aug. 29, 2016) ("[T]he ALJ found that Plaintiff had only moderate limitations with regard to concentration, persistence or pace. Such limitations could be accommodated by performing 'simple, routine work.'" (record citation omitted)). Plaintiff fails to show that any other limitation is warranted in this area. And the ALJ's determination is supported by substantial evidence. *See Webb v.*

*Comm'r of Soc. Sec.*, No. 1:20-CV-1206, 2022 WL 4545508, at *8 (W.D. Mich. Sept. 29, 2022). Thus, Plaintiff fails to meet his burden of showing that he is more limited than what the RFC assessed. *See Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of a disability.").

The foregoing constitutes substantial evidence in support of the ALJ's RFC determination, which included several significant limitations, and Plaintiff has not explained how this record justified more restrictive ones. *See Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *16 (E.D. Mich. Mar. 31, 2014) ("Here, plaintiff argues that the ALJ's limitation of plaintiff to 'simple, routine, and repetitive tasks' does not sufficiently account for the moderate impairment in [CPP]. Plaintiff does not, however, satisfactorily explain how his moderate impairment in [CPP] is not fully accounted for in the RFC."). Instead, Plaintiff argues that "during the examination of the vocational expert, the expert testified that if an individual is off task for 15% of the day, this would preclude work." (ECF No. 10, PageID.837). But Plaintiff provides no support for this assertion and essentially ignores the ALJ's mention of the types of jobs Plaintiff could perform.

For all the above reasons, and on an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## VI. CONCLUSION

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, Plaintiff's *Motion for Summary Judgment* (ECF No. 10) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 12) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

Date: September 8, 2026

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge